Lancaster et al. v. Prussing.

John E. Lancaster, William Wallace, John T. Wallace, Laura Wallace, Thomas Wallace, Emma Wallace, Edwin Wallace, Bessie G. Wallace (now Bessie Wallace White), Frank P. White, Helen E. Guard, Mary F. Guard, Martha C. Guard, Thomas H. Guard, Eugene B. Guard, Mrs. Thomas H. Guard and Paul L. Guard, for use of Leslie A. Needham, v. Eugene E. Prussing, as Trustee, and Illinois Trust & Savings Bank, a corporation.

### Gen. No. 13,448.

1. DECREE—*how far subject to review in the absence of objections and exceptions to the master's report upon which it is predicated.* Where no exceptions or objections have been interposed to a master's report upon which a decree is predicated, all questions of law raised which do not find warrant or support in the facts found are, nevertheless, subject to review.

2. EXTENSION OF TIME OF PAYMENT—*what does not establish valid agreement for.* While payment of interest in advance is a sufficient consideration to support an agreement of extension, yet, in the absence of any evidence to support the agreement, it is neither *prima facie* proof nor presumptive evidence of such agreement where the anticipated period consisted of one-half holiday and two days which were *dies non juridicus.*

3. EXTENSION OF TIME OF PAYMENT—*when agreement authorizing not revoked by death.* An agreement contemporaneous with the contract of suretyship, by which a surety authorizes renewals from time to time, is a power coupled with an interest which the death of the surety does not terminate.

4. PRINCIPAL AND SURETY—*burden of proving release.* The burden of proving the release of the surety primarily rests upon such surety.

5. FORECLOSURE—*when rents accruing during the period of redemption properly applied in extinguishment of deficiency decree.* Where the trustee pledges as well the rents as the land, it is proper for a

3

court of chancery to appoint a receiver to collect the rents accrued from the property foreclosed and to order their application in extinguishment or in reduction of the deficiency decree ancillary to the sale.

6. RES ADJUDICATA—*when lien of trust deed is*. Where the rights and interests of all the parties in the land were made the subject of a partition proceeding, and in that proceeding the status of a trust deed was determined, the validity of such trust deed and the efficacy of its lien cannot subsequently be questioned by those who were parties to such partition proceeding in a proceeding to foreclose such trust deed.

Foreclosure. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed October 28, 1907.

An order of severance pursuant to the directions of the statute has been entered, in which all plaintiffs in error other than those named in the title of this cause, have been severed and forever barred from impeaching either the decree or any of the proceedings of the Superior Court. The review of the case will therefore be restricted to such matters which affect only the rights and interests of the plaintiffs in error, who by the same order of severance have been allowed to prosecute this writ of error alone.

Before proceeding to make a statement of facts the motion of plaintiffs in error to strike from the record the indorsement on the trust deed by Nimrod Lancaster authorizing an extension of payment from time to time of the Springer debt secured by the trust deed, reserved to the hearing, will be denied.

**Statement by the Court.** The defendants in error filed their bill August 1, 1898, to foreclose a trust deed dated January 5, 1892, given by one Nimrod Lancaster and Charles E. Springer, conveying to Eugene E. Prussing as trustee certain unimproved real estate in Chicago, to secure an indebtedness of $58,500 of the grantor, Charles E. Springer, to the Illinois Trust & Savings Bank, and evidenced by the note of Charles E. Springer for that amount, payable five years after date, with interest at six per cent per

Lancaster et al. v. Prussing.

annum, payable half-yearly, the interest being further evidenced by ten coupon interest notes, payable each succeeding six months until the maturity of the loan.  Lancaster owned the fee of the mortgaged property, which he had leased to Springer by an indenture of date January 13, 1892, for a term ending May 1, 1913, at an annual rental of $1,200.    The lease was made subject to the lien of this trust deed.  In accordance with an agreement attached to the lease made between Lancaster and Springer thirteen three-story dwelling houses were erected upon the leasehold mortgaged premises.  Both the trust deed and the lease were executed on January 13, 1892, by Lancaster and Springer before Monroe Johnson, a notary public, at San Diego, California. On the back of the trust deed Nimrod Lancaster signed, before Monroe Johnson as a witness, the following agreement under seal:

"I hereby agree that the said Charles E. Springer may have the loan mentioned within this trust deed, or any part of said loan, renewed from time to time, as he may see fit, and this trust deed will still act to secure the said loan and the principal note or notes in case of the renewal of the same, or any part of it."

Indorsed on the principal note is the following:

"July 1, 1897.
Interest paid to July 5, 1897.
Interest paid to Jany. 5, 1898."

Among other provisions of the trust deed is one for entry in case of default in payment of the debt, and a waiver of all right to retain possession of the mortgaged premises during the period of redemption.

The thirteen houses were in due course erected at an expense of $83,608.32, the money loaned by the Illinois Trust & Savings Bank to Springer forming a part of such outlay.

The last installment of rent paid by Springer under the Lancaster lease was on May 1, 1897, and on February 1, 1898, he surrendered possession of the premises to the Illi-

nois Trust & Savings Bank, for the purpose of having the income applied to the payment of necessary charges and applying what might remain thereafter to the payment of interest on the indebtedness.

The trust deed contains the following covenant affecting, as it is claimed, the application of the income of the mortgaged property during the period of redemption:

"And the said party of the second part, or the persons appointed by the court to execute this trust, may, in case of default or breach of covenant, take immediate possession of said premises, and collect the rents and profits as above provided, until the time of redemption shall expire, under any sale that may be made by virtue of this trust deed, and the said party of the first part hereby expressly waive and release to the said party of the second part, his successor or person appointed by the court to execute this trust, all rights, which they now have or may hereafter have, under any law of this State, to retain possession of said premises after any such default or breach of covenant as aforesaid, *until the time for redemption expires.*"

The Illinois Trust & Savings Bank bought the note secured by the trust deed from the Cold Storage Warehouse Fire Relief fund trust, the then owner of it, after its maturity, while default in payment existed and the interest to January 5, 1898, had been paid and indorsed upon the note. The bill alleges that the interests of the defendants in the premises sought to be foreclosed were acquired subsequent to and are subject to the lien created by the trust deed.

By a decree entered in a partition suit December 22, 1900, in which plaintiffs in error were parties, or those from whom they assert their claim of title, the trust deed in question was decreed to be a first and valid lien, paramount to the claim of title of all parties to the partition suit, and the title thereto was decreed to the several parties subject and subordinate thereto.

On June 14, 1895, Nimrod Lancaster died testate, and plaintiffs in error claim title either as devisees under his will, or as personal representatives of George Wallace, one

of said devisees, since deceased, namely, John E. Lancaster, William Wallace and John T. Lancaster as devisees, and Thomas Wallace, Walter Wallace, Edwin Wallace and Bessie Wallace White as heirs at law of George Wallace, deceased.

The answers filed in the main neither admit nor deny the material averments of the bill in relation to the indebtedness claimed or the lien of the trust deed, but as to these matters calls for strict proof. Ownership by Nimrod Lancaster of the mortgaged premises is admitted at the date of the trust deed, also the making of the lease to Springer; admit also the filing and pendency of the bill for partition as alleged. By a supplemental answer filed July 23, 1901, the Guards admitted that a decree in partition had been entered in the partition suit March 14, 1901; that the mortgaged premises had, by order entered in that cause, been divided in lots, and a plat thereof made, with the consent of defendants in error, and asked that in any decree of sale entered the mortgaged premises be ordered sold in lots according to the plat of such subdivision, a copy of which was attached to that answer. The agreement of Nimrod Lancaster on the back of the trust deed as to renewals of the loan is challenged in these words: "that as to the alleged agreement indorsed on said alleged trust deed, they have no knowledge, and therefore neither admit nor deny the allegations with respect thereto, as contained in said bill of complaint, but put complainants upon proof thereof."

One Sills was, on March 8, 1900, appointed receiver of the mortgaged premises, with the consent of the answering defendants, the Wallaces and Whites being then defaulted, and the bill resting as confessed by them. The Illinois Trust & Savings Bank was at this time in possession, but acquiesced in the appointment and surrendered the property into the hands of the receiver.

March 20, 1902, a decree of foreclosure and sale was entered, the master's report confirmed, $69,254.69 being found due the Illinois Trust & Savings Bank after deducting moneys received from rent of the mortgaged property, also finding $1,500 to be due for reasonable solicitor's fees con-

tracted in the prosecution of the foreclosure suit.   The decree
has this finding, viz.: "That by virtue of said trust deed
complainants, Eugene E. Prussing and Illinois Trust & Sav-
ings Bank, have a first and valid lien upon the premises de-
scribed in the bill and upon the rents, issues and profits for
the amounts due as above determined; and the court further
finds the rights and interests of all defendants to this suit
in and to said premises are subject and subordinate to the
lien thereon in favor of said bank for the amounts due it as
aforesaid."

On April 24, 1902, the report of the sale of the mortgaged
premises by the master under the decree to John J. Mitchell
for $66,000 was approved and a deficiency decree against
Charles E. Springer for $5,598.44 entered, and the re-
ceiver ordered to continue in possession and apply the rents
to be collected on such deficiency.

This writ of error is sued out by plaintiffs in error for
the use of their solicitor of record, Leslie A. Needham, to
reverse the decree of the Superior Court—the title of
Mitchell as purchaser at the master's sale not being attacked
—and also to enter a money decree, with interest, against
the defendant in error, the Illinois Trust & Savings Bank,
for the following sums:

Interest indorsed on note as paid to Jany. 25,
    1898 .....................................$ 1,755.00
Moneys received from rents under decree of March
    20, 1902...............................$ 6,388.06
And also the amount of the bid at sale of April 17,
    1902, of................................  66,000.00
                                            _____
Making a total money decree asked exclusive of
    interest ...............................$74,143.06

The errors assigned are that the decree of March 20, 1902,
is contrary to and inconsistent with the law and the evi-
dence, and not supported thereby, that it is for an excessive
amount, that the conclusions of law in both the master's

report and the decree declaring the trust deed to be a lien, and in decreeing a lien on the rents during the period of redemption, are contrary to the findings of fact in the decree, and that as to the lien on the rents during redemption, the decree is erroneous and inequitable.

JACOB VERBURG and LESLIE A. NEEDHAM, for plaintiffs in error.

JAMES C. HUTCHINS and MAX BAIRD, for defendants in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The arguments of counsel for plaintiffs in error are more ingenuous than appealing or convincing. Every proposition advanced for reversing the decree is fraught with extreme legal technicality, and much of the argument made in an attempt to solve these legal technicalities and adapt and make them applicable to the facts in the record, are sophistical, strained, and unnatural, and not at all in keeping with the conscionable administration of justice, or the application of equitable principles governing and controlling courts of conscience, akin to the forum whose jurisdiction and equitable doctrine environed the parties and the subject-matter of the contention between them.

Two contentions are deducible from the errors assigned and the arguments made in support of them:

First, that the time of payment of the principal note was extended without the consent of Nimrod Lancaster, whereby the lien of the trust deed was discharged; and

Second, that rents of the mortgaged premises during the period of redemption were the property of the owners of the equity redemption, and not subject to be applied towards the extinguishment of the deficiency decree against Charles E. Springer. On the contrary, defendants in error argue, with some plausibility, that no extension of time of payment, was either, in fact, made or proven; that if such an extension

was made as claimed, it was done under the express written authority of Lancaster; that the decree in the partition proceeding is *res adjudicata* as to all the claims of plaintiffs in error; that the lien of the trust deed, and all the rights and interests of all the parties here, were settled and declared by that decree, and finally that the rents of the mortgaged premises during the period of redemption are pledged by the very terms of the trust deed as security for the payment of the debt which it was made to secure.

No objections or exceptions were filed to the master's report. It is contended by defendants in error that in this condition of the record it is not open to our review. This contention is not, in its broadest aspect, tenable. All parties, however, are concluded in this condition of the record from questioning the findings of fact either in the master's report or the decree of the court. But the record is open for our review on all questions of law raised, not finding warrant or support in the facts found—and within these limitations we will confine our review and opinion. There are found upon the back of the principal note, in the same handwriting, the following indorsements written on the lines as here quoted, viz.:

"July 1, 1897,
Interest paid to July 5, 1897.
Interest paid to Jany. 5, 1898."

We have the principal note before us, and have critically examined these indorsements, and we are of the opinion from such inspection that the last line "Interest paid to Jany. 5, 1898," was written subsequent to the prior portion of the indorsement.

It is insisted that these indorsements of interest were made, and the two installments of interest actually paid at the same time, July 7, 1897; that the first payment was four days before maturity, and the second a six months' advance payment of interest; that an advance payment of interest, however short, operates to extend the loan and to discharge

Lancaster et al. v. Prussing.

the land from the lien of the trust deed, when done without the consent of the surety owner of the land; that such presumption conclusively arises, as a matter of law, from the indorsement, without proof of the fact, or the intention of the parties; that a purchaser, subsequent to maturity and such indorsement, takes the note with notice that the lien of the security is discharged.

The assumption, from the indorsement upon the note, that the time of payment was extended, is a most violent one in the face of the facts in the record. More especially is the contention that payment of interest on July 1, due July 5, would presumptively, in law, discharge the surety.

While the payment of interest in advance is sufficient consideration to support an agreement of extension, yet in the absence of any evidence to support the agreement, it is not, as in the circumstances environing this case, either *prima facie* proof or presumptive evidence of such an agreement. It is fairly inferable that the payment of interest due July 5, on July 1, was merely a matter of convenient anticipation, in the light of the fact that July 2 was a half holiday, and the two following days, a Sunday and "July Fourth," *dies non juridicus.*

New York Life Ins. Co. v. Casey, 178 N. Y., 381, is so analogous on fact and principle as to constitute an authority of controlling effect. The court there held, reversing the decision of the Appellate Division of the Supreme Court of New York in the same case, that a valid extension of the time of payment of a bond and mortgage, such as will discharge one standing in the relation of surety for the payment of the mortgage debt, is not established as a matter of law, by the mere receipt from the grantee of the premises of interest three days in advance, when there is no other proof of an agreement, express or implied, for such an extension, and two and a half days of the three were legal holidays. Especially is this reasoning most cogent here, in the entire absence of evidence as to who paid the interest, or of any agreement for the extension of the time of payment being granted. Nor can we, contrary to the only evidence found

in the record that the interest paid to January 5, 1898, was paid from rents collected by the bank on July 20, 1898, adopt the fallacious reasoning of counsel for plaintiffs in error, that the same was paid July 1, 1897, because that date is the only one appearing over the two indorsements of interest payments. After the payment of the last interest, defendant in error, Illinois Trust & Savings Bank, bought the note.

It logically follows, from what we have heretofore said, that the record does not disclose any evidence of an extension of the time of payment of the Springer note. But, were we wrong in this holding, there is sufficient evidence in the record authorizing an extension of the time of payment by Lancaster, the surety. That authority is contained in the agreement indorsed on the back of the trust deed, executed under seal at the same time the trust deed was acknowledged before Johnson, the notary, at San Diego, California, and in his presence, as his attestation thereof undisputably establishes. But it is said because this indorsement on the trust deed was not separately offered in evidence, it has no place in the record as proof. We are unable to agree with this contention. To so hold would necessitate, by parity of reasoning, the exclusion of the indorsements of payments of interest on the principal note, relying upon which plaintiffs in error contend the lien of the trust deed was presumptively released. To do so would automatically operate to take from under plaintiffs in error the foundation stone upon which they have builded a very insecure structure of defense.

It is next insisted that the death of Lancaster revoked the agreement of consent, if such it may be termed. The agreement was set up in the bill in *hœc verba,* and its legal effect as a consent to an extension of payment declared. The instrument being before the court, the court would declare its legal effect.

None of the answering plaintiffs in error denied the making of the agreement, or sought by any averment to avoid it. They called for proof, and that proof was forthcoming and passed unchallenged. No direct issue was made as to the legal effect of this agreement contradictory of the aver-

ments of the bill. If the question was material as raised, which we are inclined to doubt, still the authority of Benneson v. Savage, 130 Ill., 352, is decisive against the contention here made. The court there held that the power was coupled with an interest and was not revoked by the death of the party making it; so the agreement here was coupled with an interest and is binding on the heirs and devisees of Lancaster.

Before leaving this branch of the case, we wish to point out that the statement of counsel for plaintiffs in error that in Beuter v. Dillon, 63 Ill. App., 517, the indorsement on the note, "Received interest to July 1, 1891, and $20 on interest due July 1, 1892," was held sufficient evidence of extension to discharge 'a surety, belies the facts. There was ample evidence of an extension without the sanction of the surety, resting in oral proof and letters between the parties and the payment of a bonus of $5 for the extension. And so it will be found in nearly all of the cases, and certainly in those well considered cited by counsel for plaintiffs in error, that an indorsement in itself was not relied upon as presumptive proof, but was aided and supported by other evidence of a confirmatory character.

The burden of proving a release of the surety primarily rests upon him. Stearns v. Sweet, 78 Ill., 446.

In Shepherd v. May, 115 U. S., 505, the Federal Supreme Court said on this subject: "But even if it had been shown that Shepherd had become the surety of Walker, it was incumbent upon the former to show, as a part of his defense, that the indulgence given by May to Walker was without his assent," citing in support thereof Sprigg v. Bank of Mt. Pleasant, 14 Pit., 201; Bangs v. Strong, 7 Hill, 250; Cox v. Mobile, etc., Railroad, 37 Ala., 320. "There was no proof of want of assent. The defense therefore failed."

No issue was made as to the validity of the lien claimed in virtue of the trust deed by any answer filed by any of the parties now seeking to avoid the decree. Neither the ownership of the notes nor the indebtedness was disputed by the answers. The extremity of the defense was the call for

strict proof of these matters by defendants in error. Such proof was made and is not challenged. Nowhere was there a denial of the affirmative averment that the rights and interests of all the plaintiffs in error were subject and subordinate to the lien of the trust deed. Nor did the answers, by any denials of charges, claim that the note had been extended without the consent of Lancaster and the lien of the trust deed thereby released.

As said in Mehan v. Mehan, 203 Ill., 180, "it is a well recognized principle of chancery that a defendant by his answer must set up the defense he relies upon."

The defense set up was not of an affirmative kind in any particular. Reliance seemed to have been rested in the ability of defendants in error to make proof of the material averments of their bill. This they did. More, the state of the pleadings did not require of them.

It was held in Amberg v. Natchtway, 92 Ill. App., 608, that where the proof showed an extension of the loan, a failure to set that fact up affirmatively as a defense precluded advantage being taken of it on appeal. Likewise, in Cole v. Shetterly, 13 Ill. App., 420, proof of failure of consideration was held to be abortive as a defense, it not being set up by way of answer. To a similar effect are Crone v. Crone, 180 Ill., 599; Home Ins. Co. v. Myer, 93 *ibid.,* 271; Westlake v. Horton, 85 *ibid.,* 230.

By reference to the statement preceding this opinion it will be seen from the covenants of the trust deed there set out, that the rents, issues and profits were pledged for the payment of the indebtedness secured thereby, and that the grantors waived all right and interest to the rents during the period of redemption. The decree of March 20, 1902, ordering the receiver to pay the rent in hand to the bank to apply upon the amount found due by that decree upon the indebtedness secured by the trust deed and the order of April 24, 1902, continuing the receiver in possession during the time of redemption, and directing the income from the mortgaged premises to be applied to the extinguishment of the deficiency

judgment against Springer, were warranted by the terms and conditions of the trust deed.

We deem it a sufficient expression of our opinion in this branch of the case to quote the language of Mr. Justice Adams in Krumwiede v. Riedel, Gen. No. 12,345 (not to be reported), and adopt it as decisive: "Counsel for appellees urge that the trust deed does not expressly pledge the rents and profits as security for the indebtedness, and therefore appellant has no lien on them. In the absence of a provision in the trust deed pledging the rents and profits as security for the debt, and where there is a deficiency of the proceeds of the sale to discharge the debt, a court of equity has power, in a proper case, to appoint a receiver of the mortgaged premises and apply the rents and profits thereof in payment of the deficiency. Haas v. Chicago B'g Society, 89 Ill., 498; First ·Nat'l Bank of Joliet v. Ill. Steel Co., 174 *ib.*, 140; Boruff v. Hinkley, 66 Ill. App., 274; Christie v. Burns, 83 *ib.*, 514; White v. Mackey, 85 *ib.*, 282.

"In·this case the makers of the note and grantors in the trust deed, Gustav R. and Katherina Riedel, are both dead. Their heirs, Oscar and William E. Riedel, are not personally liable for the debt secured by the trust deed, and therefore no judgment could be rendered against them for the deficiency, and it is averred in appellant's answer to Oscar Riedel's petition, and not denied, that Gustav R. and Katherina Riedel left no estate from which the deficiency can be satisfied.

"Under these circumstances, we think this an eminently proper case in which to apply the rents and profits accruing during the period for redemption to the payment of the deficiency."

Lancaster pledged the real estate for the payment of the Springer indebtedness, and to the liquidation of that indebtedness the property should be held to the full measure of the contract covenants securing it. All rights having been waived and relinquished during the time of redemption, this is also an eminently appropriate case where equity should interpose by a receiver for the application of the income of

the security to the payment of the deficiency decree.    Haigh v. Carroll, 209 Ill., 576; Ball v. Marske, 202 *ibid.*, 31.

The rents were pledged by the terms of the trust deed, and the receiver was properly appointed before decree, and afterwards continued in possession for the purpose of providing a means whereby the deficiency decree might be satisfied.

At the time of the appointment of the receiver, after the filing of the bill to foreclose, the defendant in error, the Illinois Trust & Savings Bank, was virtually in possession as mortgagee and rightfully so.    Its surrender of such possession was predicated on the court's appointing a receiver, to which action of the court the parties appearing consented, and those who were defaulted and against whom the bill was taken as confessed are likewise bound; and all are now precluded from objecting to the action of the court, which received their assent actually or in contemplation of law by suffering a default.

The money loaned under the security of the trust deed the record shows was used toward defraying the cost of the erection of thirteen dwelling houses on the land conveyed by the trust deed, which was under lease to Springer, the maker of the note evidencing the debt.    Springer disbursed the total sum of $83,000 in the making of the improvements.    The money was loaned from trust funds of the defendant in error, the Illinois Trust & Savings Bank.    The benefit of these improvements inured to Lancaster, the fee owner, and on his death descended to his heirs and devisees, subject to the lien of the trust deed.    Springer defaulted in the payment of ground rent and in the payment of his note.    The heirs and devisees, by a legal proceeding, forfeited Lancaster's lease to Springer for his default to them.    The Savings Bank foreclosed the trust deed for non-payment of the debt which it owed.    They were both within their legal rights in the steps which they each took.    Springer afterwards conveyed, by quit-claim deed, his wife joining in its execution, his interest in the land and improvements.    In equity and good conscience, in law and in morals, plaintiffs in error took whatever title they had, whether under Lancaster's will, the for-

feiture proceeding, or the Springer deed, or all three of them, subject to and burdened with the payment of the debt owing by Springer to the Savings Bank, secured by Lancaster's trust deed, the money thus secured having been used by Springer in the improvement of the mortgaged land. Such is the covenant of the trust deed, and no legal quibbles or fine-spun hair-splitting legal technicalities will suffice to overcome the contract rights of the parties, or defeat a meritorious claim by an attempt to make callous the conscience of a court of equity.

All parties to this writ of error were joined in the partition suit of the mortgaged premises, with other property, under a bill filed August 1, 1898, by Robert H. Lancaster against his co-heirs and devisees and defendants in error. A decree of partition was entered December 22, 1900, fifteen months prior to the entry of the foreclosure decree. The partition decree was entered without objection on the part of plaintiffs in error, or any other party in interest. That decree found in direct terms that the interest of all the parties was subject to and charged with the lien of the trust deed here foreclosed. By the Partition Act it is made the duty of the court to ascertain and declare the interest of all the parties to the cause, and in pursuance of such statutory requirement, the court found and declared the interest of defendants in error under the trust deed as prior and paramount to that of all the other parties. In the partition suit a subdivision and plat of the land was made by the commissioners in partition and the foreclosure sale made in accordance with such subdivision at the request of certain defendants in error, who filed a supplemental answer so requesting the court to order.

It seems to us, beyond dispute, that the doctrine of *res adjudicata* is an impregnable wall of defense against any attack upon the valid and binding force of the lien created by the trust deed. The lien of the trust deed was pertinent to the inquiry in the partition suit, made so by statute. The decree in this, as in all other respects, bound the parties to it. Among those parties are the plaintiffs in error, and as

to them it stands fast and firm, alike immune from either direct or collateral attack. The partition decree is in evidence and works an estoppel on plaintiffs in error either to attack, impeach or disturb its verities. Plaintiffs in error contend that this writ of error being a new suit, defendants in error, in order to avail of the doctrine of *res adjudicata* as a defense to this present attack, must plead that fact in bar of the errors assigned. We cannot assent to such a doctrine as applicable to this cause. Such pleading, in our opinion, is unnecessary and would serve no useful purpose. The record is here for review. We find that the decree in partition is a part of that record. Its legal purport and bearing upon the rights of the parties are subjects for our determination on such review. The finding that the partition decree was entered of record is a finding of fact which, failing of objection and exception, stands admitted.

Furthermore the decree was a record of the Superior Court, of which that court could take judicial notice.

Again it is contended that the lien of the trust deed had been discharged pending an adjudication in the partition cause and prior to the decree making partition and establishing the priority of lien of the trust deed, and that the decree in partition found and determined the rights of the parties as they existed at the date of the commencement of the partition suit, and not as of the date of the decree.

It will be observed that more than three years had elapsed between the time it is claimed the lien was released by an extension of the time of payment of the Springer note without the consent of Lancaster, and the entry of the decree in partition. In these circumstances it was incumbent upon plaintiffs in error to set up that fact by supplemental answer in the nature of a plea *puis darrien continuance*. Failing so to do, the decree concludes them from now availing of that defense, which we have clearly shown is without legal force or merit.

We do not regard it as necessary to our disposition of this cause to pass upon the question as to whether or not plaintiffs in error are in the position of a surety who has been in-

demnified. Whatever may have been the effect in law of their acceptance of the Springer deed, it certainly did not operate to relieve the mortgaged property from the lien of the trust deed given to secure Springer's debt, the proceeds of which, with other money, was expended in improving the land and enhancing its value.

The learned counsel, the usee of certain plaintiffs in error in whose name, but for the counsel's own use, this writ of error is prosecuted, not only seeks a reversal of the decree, but in his zeal, prompted, it may be, from the dual role in which he appears before us, as an advocate and the sole party beneficially interested, asks for a money decree of $74,143.06 with interest on the items entering into that gross sum at five per cent per annum, without offering to do equity or to abide by any order which this court might deem proper to make, based upon the legal rights and equities of defendants in error, if any, appearing from the record, and without any offer to pay any part of the money of the Savings Bank invested by Springer in building improvements upon the land mortgaged by the trust deed. We cannot but voice our astonishment, in view of the record, of this apparently unconscionable demand. The courts conserve rights; they do not piratically destroy them. Right and justice has been attained by the decree of the Superior Court. It is therefore affirmed.

The cost of the additional abstract of record will be taxed against plaintiffs in error.

*Affirmed.*