Chris G. Steger, Individually and as Trustee under the will of John V. Steger, Deceased, Complainant and Appellant, v. Thomas E. Northen, Trustee, et al., Defendants and Appellees.
Chicago Title & Trust Company, Conservator of the Estate of George F. Steger, Insane, Cross Complainant and Appellee, v. Chris G. Steger, Individually and as Trustee, Cross Defendant and Appellant.

## Gen. No. 28,097.

1. TRUSTS—*bill for appointment of trustee not dismissible where cross-bill seeks appointment of different trustee.* A bill by one of the trustees seeking the appointment of a designated person as trustee of the estate to succeed a trustee who has resigned cannot be dismissed on motion of the complainant where a cross-bill has been filed by the conservator of a beneficiary seeking the appointment of a different person as trustee, on the ground that the person named in the original bill is not qualified, especially where other beneficiaries join in opposition to the appointment of such person on the same ground, since such cross-bill seeks affirmative relief within the meaning of Chancery Act, sec. 36, Cahill's Ill. St. ch. 22, ¶ 36, providing that no complainant shall be allowed to dismiss his bill without the consent of the defendant after a cross-bill has been filed.

2. TRUSTS—*when amended cross-bill properly allowed to be filed.* It is not error to permit the conservator of a beneficiary of a testamentary trust to file an amended cross-bill after complainant had sought to dismiss his original bill seeking the appointment of a designated person as trustee in place of one who had resigned, where the original cross-bill was filed before the motion for leave to dismiss was made and it appears that the appointment of a successor to such resigned trustee as soon as possible is necessary, and that justice will be furthered by disposing of the matter in one proceeding.

3. TRUSTS—*when appointment of interested person as trustee properly refused.* It was not error to refuse to appoint as trustee of a testamentary trust, the *corpus* of which consists chiefly of the stock of a manufacturing corporation, a person who is an officer, director and stockholder of such corporation and who enjoys the confidence of president of the company, who is one of the beneficiaries and one of the two remaining trustees and one of the three directors of the company, where the retiring trustee was not interested in the corporation or the trust fund in any way, and it appears

from the will that the testator intended that one of the three trustees should be a disinterested person and where the appointment of such person is opposed by the other beneficiaries.

4. TRUSTS—*appointment of trustee contrary to will creating trust erroneous.* It was an abuse of discretion to appoint as testamentary trustee the principal trust officer of a trust company which was conservator of the estate of an incompetent beneficiary, notwithstanding the conceded character, integrity and business ability of such appointee, where such appointment was made to fill a vacancy caused by resignation of one of the original trustees nominated by the testator, whose successor under the will should not be a beneficiary, especially where it appears that because of the indebtedness of the incompetent beneficiary and the attempt of his creditors to hold a manufacturing corporation, the stock of which forms the principal portion of the *corpus* of the estate, liable for a substantial portion of the debts, his duties as trustee and as trust officer of the conservator may conflict and become antagonistic, and where the appointment is made over the objection of one of the other trustees who is also one of the main beneficiaries and the active and efficient head of the corporation.

Appeal by complainant from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Reversed and remanded with directions. Opinion filed May 31, 1923.

MAYER, MEYER, AUSTRIAN & PLATT and SIMON T. SUTTON, for appellant.

CHARLES S. DENEEN and ROY MASSENA, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

The complainant, Chris G. Steger, seeks by this appeal to reverse a decree of the circuit court of Cook county, entered May 8, 1922, appointing Abel Davis (a vice president and the trust officer of the Chicago Title & Trust Company) as one of three trustees, and as successor in trust to John Edward Maass who had resigned, under the last will and testament of John V. Steger, deceased.

John V. Steger departed this life on June 11, 1916, testate. He left a large estate. He had been the pres-

ident of Steger & Sons Piano Manufacturing Company. His will was duly admitted to probate in the probate court of Cook county on September 14, 1916. He left him surviving Louise Rosena Steger, his widow, and Chris G. Steger, Marie Steger Northen, George F. Steger, Annie Nellie Johnson and Estelle Henrietta Hinman, his children, as his only heirs at law and next of kin. By the will he appointed as executors his two sons, Chris G. and George F. Steger, and his son-in-law, Thomas E. Northen, husband of Marie Steger Northen, and they qualified and acted as executors and were discharged as such on June 2, 1920. The widow renounced under the will and has been paid her legal portion of the estate. By the will also the testator appointed three trustees, viz.: his two sons, and John Edward Maass, a vice president of the Corn Exchange National Bank of Chicago, and they accepted the trust. After providing for the payment of certain legacies and making certain bequests to old employees and for charitable purposes, the trustees were given the sum of $150,000, in trust, the net income therefrom to be paid to the testator's daughter, Marie Steger Northen. Two similar trust funds of $100,000 each were created for the benefit of the two other daughters. All the rest and residue of the estate was given to the trustees, in trust, and they were directed to pay the' net income thereof,—one-half to Chris G. Steger and one half to George F. Steger, in equal semiannual instalments during their respective lives. The principal assets of the estate were: (1) The Steger building, a 19-story office building at the northwest corner of Wabash avenue and Jackson boulevard, Chicago; (2) certain improved town lots in the Village of Steger, Illinois, and (3) about 1,470 shares of the capital stock of the piano company, the total number of shares being 1,620. The book value of this stock is about $2,000 a share. Because of the widow's renunciation there were transferred to her approximately 480 shares of this stock, and approx-

imately 980 shares (considerably more than a majority of all the shares) passed by the will to the trustees, in trust, which shares they or their successors are entitled to vote at all stockholders' meetings. After the testator's death, Chris G. Steger, his elder son, became and still is president of the company. George F. Steger, the younger son, became its secretary and treasurer. For several years he had acted as superintendent of the factories. The company did, and is now doing, a large business, amounting annually in normal times to about $2,500,000. Its factories are located at Steger, Illinois, where it employs a large number of men. Its executive offices, stores and display rooms are in the Steger building, which has an annual gross rental of about $177,000.

On January 28, 1921, George F. Steger was adjudged insane by the probate court of Cook county and the Chicago Title & Trust Company was thereafter appointed and is now acting as the conservator of his estate. In article 2 of said will, after making the appointment of Chris G. Steger, George F. Steger and John Edward Maass as trustees, it is provided as follows:

"In case of the death of either said Chris G. Steger or said George F. Steger prior to my decease or prior to the termination of the trusteeship to which he is appointed hereunder, or in case of his refusal, incapacity or inability to act as such in such capacity or voluntary retirement or removal from office as such trustee, I nominate, constitute and appoint as his first successor my son-in-law, Thomas E. Northen, to act in his place and stead."

Pursuant to the automatic operation of this provision, Thomas E. Northen, after said adjudication of George F. Steger's insanity, became one of the three trustees, as first successor in trust to George F. Steger. He has since been acting as such trustee, and he is also one of the three directors of the piano company. The other two directors are Chris G. Steger and Charles

E. Byrne. After said adjudication Byrne became the secretary and treasurer of the company. For more than 10 years he has been connected with the company and active in its business affairs. He had the confidence of the testator, and before the latter's death had been given full charge of the advertising department of the company. He enjoys the confidence of Chris G. Steger. He receives an annual salary, as secretary and treasurer, of $10,000. Chris G. Steger's annual salary as president is $50,000. It was voted to him by the directors at the last meeting held while George F. Steger was a director and before the latter's insanity adjudication. Outside of the 980 shares of the company's capital stock held by the trustees, and outside of those shares which were transferred to the widow after she renounced under the will, Chris G. Steger is the owner in his own right of 50 shares, Thomas E. Northen of 10 shares, Mr. Hinman, husband of Estelle Henrietta Hinman, of 10 shares, and Charles E. Byrne of 10 shares. The balance of the 1,620 shares is in the treasury. Byrne's 10 shares were acquired by him by gift from Chris G. Steger.

On June 15, 1921, John Edward Maass resigned as trustee. Chris G. Steger testified: "I asked him to resign. It wasn't because I wished Mr. Byrne placed in his stead. * * * He was requested to resign because we asked him to execute some transfers of real estate which were then in the possession of the trustees to my brother and myself, for which we were going to pay the estate, but he refused to sign those, as he stated, on advice of counsel. * * * We could not get anywhere trying to convince him that he ought to sign those real estate transfers, so I told him then that I would have to ask for his resignation." It was also provided in article 2 of the will as follows:

"And if for any like cause, as to any trustee or successor in trust, a further vacancy occurs in said trusteeship or in case said first successor, Thomas E. Northen, fails or refuses to act or retires from said

office as such trustee, then the Circuit Court for the County of Cook, in Chancery, shall, upon petition or bill filed by any party pecuniarily interested in my estate and due notice to others in interest, nominate, constitute and appoint a trustee or trustees to fill such vacancy or vacancies in said trusteeship, so that there shall be at all times during the term of said trusteeship, as hereinafter limited, as near as may be, three qualified trustees to act in the said premises, * * * provided further that no beneficiary hereunder shall be appointed at any time as first or subsequent successor in trust to said John Edward Maass.''

It was in pursuance of this provision of the will that Chris G. Steger, individually and as trustee, filed the present bill of complaint on July 14, 1921, praying that "the court may appoint Charles E. Byrne as trustee * * * in the place and stead of John Edward Maass, who has resigned." After setting out the will and stating some of the material facts above mentioned, complainant alleged that he is pecuniarily interested in the trust estate; that "some person familiar with the business affairs and management" of the piano company be appointed as successor in trust to Maass; that Charles E. Byrne has the necessary qualifications; that he is a man of mature years, wide business experience and unquestioned integrity; that he has been connected with the piano company for about 10 years and is thoroughly familiar with all the property of the trust estate, and that he is not a beneficiary under the will and is willing to act as trustee. On the last page of the bill is the statement, signed by Charles E. Byrne: "I hereby signify my willingness to act, if appointed, as prayed for above."

Thomas E. Northen, as trustee, answered the bill admitting substantially all of its allegations and stating that "some fit, competent and proper person" should be appointed as trustee by the court to fill the vacancy. He made no suggestions as to who should be Maass' successor. The three daughters of the testator filed a joint and several answer admitting many

Steger v. Northen, 229 Ill. App. 529.

of the allegations of the bill. They stated, however, that they "jointly and severally object to and protest against the appointment of said Charles E. Byrne as trustee," and prayed that the court appoint "some fit, competent and *disinterested* person." The Chicago Title & Trust Company, as conservator, filed its answer on October 24, 1921. It denied that said Byrne had the necessary qualifications to act as trustee and stated that the court should appoint a person not connected with the piano company, one having business and executive ability. Maass, as trustee, and the unknown heirs, devisees and legatees were defaulted, and a guardian *ad litem* was appointed for certain minor defendants, grandchildren of the testator, and for George F. Steger, insane, and said guardian filed an answer in their behalf.

After replications were filed, the cause was called for hearing before the chancellor on January 13, 1922. Thereupon and before any evidence was heard complainant asked leave to dismiss his bill. The defendant, Chicago Title & Trust Company, as conservator, objected to the granting of the motion on the ground that, about fifteen minutes before the case had been called for trial and said dismissal asked, it had filed a cross-bill, praying for the appointment, as successor in trust to said Maass, of Abel Davis. The cross-bill was not then in court but counsel for said defendant stated its contents. Whereupon complainant moved to strike the cross-bill from the files, stating as grounds for the motion that said defendant had no right to file the same or the court to entertain it. The court continued the motion and the hearing until the following day, at which time said defendant, as conservator, stated that it contemplated filing an amended cross-bill, which it asked leave to file. Whereupon complainant objected because he had already asked that his bill be dismissed and that said defendant's original cross-bill be stricken, which objection the court overruled, permitted said defendant to file its amended cross-bill,

and entered a rule upon complainant and the other cross defendants to plead, answer or demur thereto.

The original cross-bill of the Chicago Title & Trust Company, as conservator, filed January 13, 1922, prayed "that the court may appoint Abel Davis as trustee * * * in the place and stead of John Edward Maass, who has resigned," and also contained a prayer for general relief. The amended cross-bill, filed on January 14, 1922, prayed that the court might appoint said Davis as trustee in the place of said Maass "for the purpose of voting the stock as trustee in the said stockholders' meeting and for the purpose of acting as such trustee until the said bill of said Chris G. Steger is determined," and that said trustees, Chris G. Steger, Northen and Maass, "account to your orator touching the management and condition of said trust estate." It also contained a prayer for general relief. By stipulation the answers of Northen, as trustee, and of the three daughters, to the original bill were ordered to stand as answers to the amended cross-bill.

On March 28, 1922, Chris G. Steger answered the amended cross-bill. He alleged in substance that on January 23, 1922, it was agreed in open court by the respective parties in interest that no annual stockholders' meeting of the piano company would be held on January 24, or thereafter before a hearing was had in the present cause, and that no such meeting was then or has thereafter been held, and that hence no emergency exists requiring the immediate appointment of a trustee; that Abel Davis has not the necessary qualifications to act as successor in trust to said Maass; that, although he is a man of broad experience and familiar with the handling of trust estates, such experience and familiarity does not render him capable of successfully administering the Steger trust estate, particularly in view of the fact that the greater part thereof consists of the active and going business of the piano company; that it is essential that all three

trustees be familiar with and experienced in the particular line of business done by the piano company, since by reason of their control of a majority of its capital stock they are in the position to dictate the policy and operation of the company; that said Davis is the vice president and trust officer of the company which is the conservator of the estate of George F. Steger, inse e, and that company, as such conservator, is attempti g to conserve the assets of said George F. Steger estate, not only for the purpose of protecting it but also of distributing its assets among persons who, as creditors, have claims against George F. Steger and his said estate; that the claims asserted amount approximately to $1,500,000; that some of said claimants, representing claims aggregating more than $500,000, are attempting to impose a liability upon and recover from the piano company the amount of said claims; and that because of this situation Davis, as vice president and trust officer as aforesaid, if he was appointed a trustee of the John V. Steger estate, would be in an "inconsistent position," in that as a trustee of the John V. Steger estate he would be interested in not having said claims fastened as a liability upon the piano company, while said Chicago Title & Trust Company, as conservator of the George F. Steger estate, might not be unwilling, in the interests of its ward's estate, to have said claims paid by the piano company. The answer denied that cross complainant was entitled to any accounting from the trustees, Chris G. Steger, Northen and Maass, as prayed. Replications were filed to the various answers to the amended cross-bill.

On March 28, 1922, the cause came on for hearing. On behalf of the complainant, Chris G. Steger and Charles E. Byrne testified, and, on behalf of the defendants and the cross complainant, Abel Davis and H. D. Pettibone, assistant trust officer of the Chicago Title & Trust Company, testified. The solicitor of the three daughters of John V. Steger, deceased, was pres-

ent at the hearing and he voiced their objections to the appointment as trustee of Byrne. The Chicago Title & Trust Company, as conservator, urged the appointment of Abel Davis, to which appointment Chris G. Steger, complainant, strenuously objected, and insisted upon the appointment of Byrne. After full argument the court, on May 8, 1922, entered the decree appealed from, appointing Abel Davis.

Counsel for complainant, Chris G. Steger, first contend that the court erred in denying complainant's motion to dismiss his bill. This motion was made when the cause was first called for hearing and a few minutes after the Title & Trust Company, as conservator, had filed a cross-bill. Having filed an answer to complainant's bill it had the right to file a cross-bill (section 30, Chancery Act, Cahill's Ill. St. ch. 22, ¶ 30), and without first obtaining leave of court (*Beauchamp v. Putnam,* 34 Ill. 378, 381; *Quick v. Lemon,* 105 Ill. 578, 585; *Inter-State Building & Loan Ass'n v. Avers,* 177 Ill. 9, 22). In the *Quick* case, it is said: "The doctrine may, therefore, be regarded as well settled, that, where a defendant has equities arising out of the subject-matter of the original suit which entitle him to affirmative relief, it would be error for the circuit court to refuse to permit a cross-bill to be filed." In section 36 of said Chancery Act [Cahill's Ill. St. ch. 22, ¶ 36] it is provided that "no complainant shall be allowed to dismiss his bill, after a cross-bill has been filed, without the consent of the defendant." It has been held that this statute "only applies to a cross-bill asking for affirmative relief, since it would be absurd to say that one who is merely defending can insist that the complainant shall remain in court in order that he may make a defense. (*Thomas v. Thomas,* 250 Ill. 354, 359.) And complainant's counsel argue that the court should have allowed the motion to dismiss complainant's bill because the cross-bill sought no affirmative relief. We cannot agree. The original bill prayed for the appointment, as trustee to succeed

John Edward Maass who had resigned, of a specific person, namely, Charles E. Byrne. It did not pray for the appointment of anyone deemed fit and proper by the court. The answer of the Title & Trust Company, as conservator, denied that said Byrne had the necessary qualifications to act as trustee. In the answer of the three daughters of the testator a similar denial was made and they protested against his appointment. These pecuniarily interested defendants desired the appointment of another person as trustee. In other words, affirmative relief was demanded. Under the circumstances, as it seems to us, the filing of the cross-bill by said defendant, as conservator, was proper and necessary. (*Mehan v. Mehan*, 203 Ill. 180, 188; *Hamalle v. Lebensberger*, 267 Ill. 602, 608; *Jones v. Bryant*, 204 Ill. App. 609, 615.) Complainant's counsel also contend that the court erred in permitting the amended cross-bill to be filed. We do not think so. It was within the discretion of the court to allow the filing of an amended cross-bill. (Chapter 7, sec. 1; chapter 22, sec. 37, Cahill's Ill. St. 1921; *Ackley v. Croucher*, 203 Ill. 530, 534.) It was apparently necessary that some fit and proper person be appointed as trustee in place of Maass as soon as possible, and it was in the furtherance of justice that the matter be disposed of, if possible, in oné proceeding.

Complainant's counsel also contend that the court erred in refusing to appoint Charles E. Byrne as successor in trust to Mr. Maass who had resigned. In 39 Cyc. p. 283, it is said:

"The appointment of a fit and proper person to be a new trustee is a matter largely within the discretion of the court. It is not, however, an arbitrary discretion, but is subject to well known and clearly defined rules." (Citing *In re Tempest*, L. R. 1, ch. 485.) "The court will always give due weight to the wishes of those chiefly interested,· but will not be controlled by such wishes against considerations of fitness. Where beneficiaries fail to agree the court should appoint a

disinterested person, not nominated by any of the parties. As a general rule, interested persons should not be appointed, unless other persons cannot be found who are willing to accept the office.''

In the *Tempest* case, *supra,* three rules are mentioned, which, it is said, should govern the court in appointing a new trustee, as follows (p. 487):

''First, the court will have regard to the wishes of the persons by whom the trust has been created, if expressed in the instrument creating the trust, or clearly to be collected from it. * * *

''Another rule which may, I think, safely be laid down is this—that the court will not appoint a person to be trustee with a view to the interest of some of the persons interested under the trust, in opposition either to the wishes of the testator or to the interests of others of the *cestuis que trusts.* I think so for this reason, that it is of the essence of the duty of every trustee to hold an even hand between the parties interested under the trust. Every trustee is in duty bound to look to the interests of all, and not of any particular member or class of members of his *cestuis que trusts.*

''A third rule which, I think, may safely be laid down, is—that the court in appointing a trustee will have regard to the question, whether his appointment will promote or impede the execution of the trust, for the very purpose of the appointment is that the trust may be better carried into execution.''

In the case of *In re Lafferty's Estate,* 198 Pa. St. 433, it appears that the testator's will provided for three trustees and that, when the number should be reduced to two, these two should petition the court to appoint a third. The candidate proposed was objected to by certain of the beneficiaries, and the court refused to appoint him. In the opinion it is said (p. 435):

''And while no reflection is intended upon the capacity or character of the proposed trustee, we think it for the best interests and advantage of all parties that he be not appointed. It is contrary to good policy. And it may not be amiss to add that if the courts,

in order to promote harmony and good feeling between a trustee and his *cestuis que trustent* and the best management of the estate, will, to secure these ends, remove a trustee, * * * *' *a fortiori,* the court should not, in the exercise of its best judgment and discretion, appoint a trustee who, for apparent valid reasons, is objectionable to a number of the *cestuis que trustent.*''

In the case of *May v. May,* 167 U. S. 310, a decree removing a trustee appointed under a certain will was affirmed. In the opinion (p. 320) the court said: ''The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised whenever such a state of mutual ill-feeling, growing out of his behavior, exists between the trustees, or between the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the cotrustees or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated.'' And the court mentioned the case of *Uvedale v. Ettrick,* 2 Cha. Cas. 130, decided by Lord Chancellor Nottingham in 1682, where it appeared that Ettrick (a trustee appointed under a will and whose removal was sought) insisted on continuing in office as trustee, and quoted from the Lord Chancellor: ''I like not that a man should be ambitious of a trust, when he can get nothing but trouble by it,'' and who ''declared that, without any reflection on Ettrick, he should meddle no farther in the trust, etc.''

In view of the above rules and decisions and the facts and circumstances in evidence, we are of the opinion that the court properly refused to appoint Mr. Byrne as successor in trust to Mr. Maass. In the first place, we think such appointment would have been

against the wishes of the testator, which can be discerned from the provisions of his will. Of the three trustees originally appointed, two were sons and beneficiaries and both were and had been closely associated with the piano company. The third trustee, Mr. Maass, was the vice president of the Corn Exchange National Bank, was not a beneficiary and was not connected with the piano company in its management. It is evident that the testator, in case it became necessary for the court to appoint a successor to Mr. Maass, did not desire the appointment of one who was active in the affairs of the piano company. Mr. Byrne is active in its affairs, is its secretary and treasurer and the owner of 10 shares of its capital stock, which was a gift to him from Chris G. Steger. In the second place, the appointment of Mr. Byrne was strenuously objected to by the three daughters and by the conservator of George F. Steger, insane. Practically all of the interested parties, save Chris G. Steger, did not want him appointed, and we do not think that his appointment, if made, would have tended to promote the proper execution of the trust, particularly in view of the strained relations existing between certain of the interested parties as disclosed from the evidence.

Complainant's counsel further contend that the court abused its discretion in appointing Abel Davis as successor in trust to Mr. Maass. Mr. Davis is the vice president and trust officer of the Title & Trust Company, which company, after George F. Steger was adjudicated insane on January 28, 1921, was appointed conservator of his estate, and as such conservator thereafter took control thereof. It became its duty at all times to conserve the assets of the estate of its ward. Complainant, Chris G. Steger, while admitting that Mr. Davis is a man of character, integrity and business ability, strenuously objected to his appointment as trustee of the John V. Steger estate and as a cotrustee with complainant and Thomas E. Northen. As such trustee he would probably become one of the

three directors of the piano company and it would be his duty at all times to act for the best interests of the John V. Steger estate and the piano company. It appears that numerous persons filed claims in the probate court of Cook county against the estate of George F. Steger, insane, on certain unpaid checks, signed or purported to have been signed by George F. Steger, aggregating about $1,500,000. Certain of these claimants, with claims aggregating about $500,000, ascertaining that the available assets of the George F. Steger estate were but a fraction of the total claims filed, joined together and filed a bill charging that the piano company was liable also for said claims on the ground of alleged benefits received by the company from the moneys paid to George F. Steger for said checks. To this bill the piano company and the Title & Trust Company, as conservator, filed demurrers and the bill is still pending. The piano company disclaims any connection with or liability for the acts and conduct of George F. Steger in signing said checks or incurring said purported liabilities, and its declared intention and purpose are to defend against said claims by every legal means. One of the objections to the appointment of Mr. Davis, voiced before the chancellor, was that, because of these circumstances, Mr. Davis might find himself in an embarrassing position. It was argued in substance that the Title & Trust Company, as conservator, stood in the place of its insane ward to defend against any unjust claims or to submit to the allowance of just claims; that it was to the ward's interest that as few as possible of the claims be allowed; that if it subsequently developed that the piano company could be held liable for some portion of said claims it might be to the ward's interest to establish that liability; that the ward's interest and that of the conservator were the same; that Davis, as trustee of the John V. Steger estate and director of the piano company, would be interested in defeating as many of the alleged claims against the piano com-

pany as was possible legally; and that it might happen that as to certain claims against the piano company he might, as trustee, feel disposed to fight against their allowance or payment, while as trust officer of the Title & Trust Company, conservator, he might feel required to fight for their allowance or payment. Subsequent to the taking of evidence, and after the chancellor had announced his intention of appointing Mr. Davis as trustee, but prior to the entry of the decree appealed from, the Title & Trust Company, as conservator, on March 31, 1922, filed an inventory of the assets of the estate of its ward. In this inventory appeared an item, No. 14, disclosing that the piano company had advanced to George F. Steger, between November 15, 1920, and December 20, 1920, $245,700, and stating that said George F. Steger "is alleged" to have transferred to the piano company, in connection with said advancements, certain personal property consisting of stocks, real estate contracts, notes, etc., and aggregating in value more than $245,000. It further appears that a galley proof of said inventory was submitted to complainant's counsel about a week before it was filed who, on March 29, wrote to the counsel of said conservator: "Is it the contention of Title & Trust Company, conservator, * * * that any of the property described in item 14 as having been transferred by George to the company should be regarded as *assets* of the estate of George F. Steger? We presume the answer is 'No.' If so, why is the item in the inventory? Should the answer be 'Yes,' then we inquire how the Chicago Title & Trust Company, as conservator, * * * can reconcile its position with the one which must be assumed by its trust officer, Mr. Abel Davis, should he be trustee of the estate of John V. Steger, deceased? On the one hand, Mr. Davis, as representative of the conservator, would be seeking to take from the piano company property which on the other hand he, as trustee of the J. V. Steger estate, would be seeking to retain for the com-

pany. We will appreciate and must insist upon a definite reply to these questions.'' No reply to this letter was received. It is apparent, we think, that said item, No. 14, has no place in the inventory unless the property there listed is regarded by the conservator as an asset of its ward's estate, that the securities listed in the item cannot become assets of said ward's estate unless the conservator attempts to recover them back from the piano company, and that such an attempt would be resisted by the piano company. On the day the decree appealed from was entered, May 8, 1922, and prior to its entry, this item in said inventory and said letter was called to the chancellor's attention and complainant's counsel again objected to the appointment of Mr. Davis as trustee and a further lengthy argument was had. When Mr. Davis testified on the original hearing as a witness for the defendants and cross complainant he was asked by complainant's counsel, ''If you receive any compensation from the J. V. Steger estate as trustee * * * would you turn that over to the Title & Trust Company?'' And he replied: ''All fees which are received as an individual are turned over to the company treasury.'' In answering the question as to the amount of time he, personally, had devoted to the administration of the conservatorship since the Title & Trust Company was appointed, he testified: ''My assistant, Mr. Pettibone, of our office is familiar with that case, and he has come to me from time to time, as he does in a good many other estates, to get my advice and suggestions. * * * It is pretty hard to estimate it. I should say once a day, sometimes every other day, Mr. Pettibone comes to my desk with a memorandum asking questions or making reports in this and half a dozen other estates. * * * We have had on some occasions conferences with your law firm, and with our own attorneys, with Mr. Pettibone, which lasted an hour or two at a time. I am familiar with the extent of the lia-

bilities asserted against the estate of George F. Steger, insane. * * * I have been made acquainted with a bill which has been filed by some of the creditors of George F. Steger which seeks to impose a liability upon the Piano Manufacturing Company.'' The court, on objection being made by counsel for the conservator, would not permit Mr. Davis to answer the question: ''What position is the Title & Trust Company going to take with reference to the claims that are asserted against George F. Steger and also asserted against the Piano Manufacturing Company?'' Mr. Davis further testified that, although George F. Steger had been adjudicated insane, he (George F. Steger) occupies one of the offices in Davis' department; that he has been there over a year and ''has assistants that the company is employing to assist him in running down these various checks. We have assigned a space to him and turned over all the records and have him working on them and he has been continuously working under the direction of myself and Mr. Pettibone and others since that time.''

As above mentioned, one of the provisions contained in article 2 of the will of the testator, John V. Steger, is that ''no beneficiary hereunder shall be appointed at any time as first or subsequent successor in trust to said John Edward Maass.'' It is further provided in said article 2 of the will, as follows:

''The powers, right, title and interest and the duties and liabilities of said trustees shall be joint and not individual, and subject to the limitations and conditions herein prescribed, and such action shall be taken in the premises as may be determined by a majority vote of said three trustees. * * *

''Said trustees shall not act independently of one another nor ignore each other in the management of the estate; but in all matters when the trust or trusts and the beneficiaries herein are entitled to the benefit of the united judgment, discretion and ability of all of my said trustees shall act jointly and a majority vote

Steger v. Northen, 229 Ill. App. 529.

of their number shall determine their joint action in the premises.   *   *   *

"In view of the disposition of my estate as herein made, whereby my said executors and trustees, *other than said John Edward Maass,* are pecuniarily interested in the due performance of the duties and the transaction of the business incident to said respective offices and as well in consideration of the particular division of my estate among the beneficiaries herein named, no compensation shall be allowed to or charged by any of said executors or trustees or successors who are named or take as residuary legatees or devisees hereunder for personal services, skill, time and trouble by them rendered or sustained in or about the performance of their said duties or the transaction of said business either as executors or as trustees."

While neither the Title & Trust Company nor Mr. Davis is a beneficiary under the will, the Title & Trust Company, as conservator, and Mr. Davis as head trust officer of that company, represent George F. Steger, who has been adjudicated to be an insane person and who is one of the main beneficiaries under the will. By the decree Mr. Davis is appointed "as successor in trust in the place and stead of said John Edward Maass." We are of the opinion that such appointment, under the provisions of the will and under all the facts and circumstances, is contrary to the rules as laid down in the *Tempest* case, *supra,* and in the other cases above referred to. When the entire will is carefully considered, we think it apparent that the appointment does violence to the wishes of the testator. The appointment was made notwithstanding the strenuous opposition of Chris G. Steger, another of the main beneficiaries under the will and the active and efficient head of the piano company. And we think that the appointment will have a tendency to impede rather than promote the further execution of the trust and the successful and harmonious management of the affairs of the piano company, which is

the most important part of the trust estate. And we think there is merit in the argument of complainant's counsel that, if the appointment of Mr. Davis as trustee is confirmed, he may be placed in the embarrassing position of representing two antagonistic interests and may "get nothing but trouble by it," as said in the *Uvedale v. Ettrick* case, *supra*. (See also, *Gartside v. Gartside,* 113 Mo. 348, 354; *In re Hirsch's Estate,* 116 N. Y. App. Div. 367, 101 N. Y. Supp. 893, 899.)

Our conclusion is that under the facts and circumstances in evidence the circuit court abused its discretion in appointing Mr. Davis as successor in trust to Mr. Maass, and that the decree appealed from should be reversed and the cause remanded with directions to the court to appoint some other man, as trustee and as successor in trust to Mr. Maass, who has business and executive ability, who is disinterested, who is not a beneficiary or representing a beneficiary under the John V. Steger will, and who has not been connected with the management of the business affairs of the Steger & Sons Piano Manufacturing Company, to the end that the evident intention of the testator, when he appointed Mr. Maass as one of the three original trustees under the will, may be given effect during the further administration of the trust estate.

*Reversed and remanded with directions.*

Barnes, P. J., and Fitch, J., concur.