*In re* MARRIAGE OF JOANNA VUCIC, Petitioner-Appellee, and AVDIJA (DON) VUCIC, Respondent-Appellant (Teresa Cwieka, Appellant).

Second District   No. 2—90—1026

Opinion filed July 15, 1991.

694

Charles Locker, of Chicago, for appellants.

William J. Scott, Jr., of Mirabella & Kincaid, of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Respondents, Avdija (Don) Vucic and Teresa Cwieka, appeal from a final judgment of the circuit court of Du Page County which dissolved the marriage of Don Vucic and Joanna Vucic, petitioner. The judgment distributed the marital property and established an $80,000 trust fund from which child support payments of $500 per month would be made for Mujo Vucic, Don and Joanna's only child. Five issues are raised on appeal: (1) whether respondent's appeal was timely; (2) whether Donald Daniel Cwieka (age five), child of Don Vucic and Teresa Cwieka, was a necessary and indispensable party to the suit because he was in title to the Marengo, Illinois, property which was a subject of this suit; (3) whether the $80,000 trust fund in Joanna's name was a proper vehicle to provide child-support payments in the amount of $500 per month for Mujo Vucic; (4) whether the trial court properly valued the West Chicago property which was a subject of this suit; and (5) whether the trial court properly dismissed Teresa's motion to modify the judgment so as to provide trust fund monies for Teresa Cwieka and Don Vucic's two children, Donald Daniel Cwieka (age five) and Sean Brandon Cwieka (age three). For reasons set forth below, we find the appeal timely, but reverse and remand because we find that Donald Daniel Cwieka was a necessary party to the suit, and further conclude that an impartial third party, rather than Joanna, should have been appointed as trustee of the $80,000 trust fund.

Don Vucic and Joanna Vucic were married on December 18, 1976. Mujo Vucic was born in December 1979 and was the only child of the marriage. During their marriage, Don and Joanna acquired joint title to a private residence in West Chicago and an apartment building on North Spaulding in Chicago. Sometime thereafter, they separated and Don fathered two children, Donald Daniel Cwieka and Sean Brandon Cwieka, by Teresa Cwieka. Donald Daniel is now five years old, and Sean is three years old.

In 1987, Don Vucic sold the Chicago apartment building, realizing $108,000 on the sale. Teresa Cwieka forged Joanna's name on the sale documents, and thereafter the sale proceeds were used as partial payment on the Marengo, Illinois, home which Don and Teresa purchased for $170,000. At the time of trial, title to the Marengo home was held jointly by Teresa Cwieka and her minor son, Donald Daniel Cwieka.

Late in 1988, Don Vucic was arrested for burglary. At the time of the dissolution trial, Vucic was incarcerated for convictions on three counts of burglary in Du Page County. Also at the time of trial, there

were outstanding complaints against Vucic in McHenry and De Kalb Counties for other criminal offenses for which he had yet to stand trial. At this time, this court takes judicial notice (*People v. Davis* (1976), 65 Ill. 2d 157, 161-65) of Don Vucic's conviction in McHenry County of possession of Federal surplus food commodities, theft, possession of cannabis and cocaine, and possession of a stolen motor vehicle for which he was sentenced to eight years' imprisonment and fined $8,000. (*People v. Vucic* (Circuit Court of McHenry County, April 10, 1990), No. 89—CF—136.) That case is now on appeal before this court. *People v. Vucic* (2d Dist.), No. 2—90—0476.

In February 1989, Joanna filed her petition for dissolution of marriage. At that time, Joanna resided with her son Mujo at the West Chicago home, while Teresa resided with her sons Donald and Sean at the Marengo home. In June 1989, Joanna filed a motion to add Teresa as a third-party defendant and later filed an amended petition for dissolution of the marriage, which claimed the apartment building in Chicago as marital property. Joanna alleged in the amended petition that the apartment building was sold without her knowledge or consent and that the proceeds from its sale were used to purchase the Marengo property. Joanna prayed for a division of the parties' interest in the Marengo property.

Teresa thereafter secured a buyer for the Marengo property and obtained an order in a separate proceeding from the circuit court of McHenry County for leave to sell the property and deposit half the proceeds for the benefit of her son Donald who, along with Teresa, was on the title to the property. The record, however, is unclear as to what was done, if anything, pursuant to that order.

The trial took place on February 9, 1990. Joanna testified that she was employed by the Village of Carol Stream; that she and her son Mujo were covered by health insurance through that employment; that in 1989 she earned $21,000 while working two jobs; and that her earnings were roughly $15,000 per year. As to the West Chicago property, Joanna testified that she and Don purchased it in 1983 for $150,000. Joanna also testified that an appraiser valued the house at $200,000. Don Vucic testified that in his opinion it was worth $300,000. No appraisal documentation was introduced as to the West Chicago property. A $19,000 mortgage remains outstanding on the property.

Joanna further testified, with supporting documentation, that the United States Internal Revenue Service (IRS) imposed a penalty of $8,451 on Joanna and Don for the 1987 tax year for negligent or intentional disregard of IRS rules and regulations regarding Don's busi-

ness deductions. Joanna stated that the IRS penalty was the result of Don's failure to produce his business records, or even appear, when they were audited by the IRS.

The topic of Teresa's two children, Donald and Sean, came up twice during the trial. Each time, the trial judge ruled *sua sponte* that Teresa's two children were not relevant to this proceeding. The following dialogue took place between the trial judge and Don Vucic during Vucic's testimony:

"THE COURT: Mr. Vucic, do you understand that there are certain issues before this Court.

There are certain issues which are not relevant.

THE WITNESS: I don't know.

THE COURT: The only thing which this Court will rule upon are the issues which arise from the marriage between you and Joann [*sic*].

THE WITNESS: But I want to be fair to her and to—

THE COURT: You can be fair to whomever you wish, the only thing I have to do is be fair to you and Joann [*sic*] Vucic.

THE WITNESS: Yes, but I can see something—

THE COURT: I understand what you are saying, sir. I understand exactly what you are saying.

But I want you to understand the Court must simply look at the issues between you and Joann [*sic*] Vucic and any other legal obligations which you may have."

Following Teresa's testimony that she and her minor son Donald were joint titleholders to the Marengo property, Donald was never joined as a party to the suit, nor was a guardian *ad litem* appointed for him.

On February 26, 1990, the court read its opinion in the case into the record. The court valued the West Chicago property as being worth $200,000 and then awarded the home and its contents to Joanna. The court barred maintenance as to both parties. The court imposed a $131,800 constructive trust on the Marengo property, that amount being the original investment of the sale proceeds from the apartment building plus one-half of the home's appreciated value. This amount was to be separated from the proceeds of the sale of the Marengo property and placed in escrow. Out of the $131,800 constructive trust, the court established an $80,000 trust for Mujo's support, a $30,000 fund for Don Vucic's immediate use and a $20,000 interest-bearing account for Don's use when he was released from incarceration. The court awarded the $1,800 balance to Joanna.

The terms of the $80,000 trust were set out in the judgment. The trust was to be held for Mujo's benefit, and in Joanna's name. Joanna

would be allowed to withdraw $500 per month for child support, and in addition she could withdraw health expenses, extraordinary health expenses not covered by insurance, the insurance premiums paid by Joanna for Mujo and yet to be determined college expenses. The trust was to terminate when Mujo either reached his majority, graduated from high school, or graduated from college, whichever came last, after which the trust would terminate and all remaining funds paid to Don Vucic. In effect Joanna was appointed trustee of a substantial portion of Don's share of the marital estate.

Two passages from the court's oral opinion are relevant here. Neither passage appears in the written judgment filed on April 19, 1990. The trial judge stated:

> "The Court realizes it is setting an arbitrary figure [of $500 per month] for child support, however, the Court feels that since [Don Vucic] will be unavailable for some period of time, at least with respect to his present sentence, that that amount is reasonable given the amount of interest which will accrue on the $80,000 which is in the trust and that at a future date [he] may come before the Court, once he is employed, to determine the exact amount of child support which should be paid."

The trial judge later stated:

> "The Court understands that there may, although the Court at this time is not making any such findings, there may be a responsibility on the part of Mr. Vucic for the support of [Donald Daniel Cwieka and Sean Brandon Cwieka] who are the natural children of [Teresa Cwieka].
>
> And the Court would expect that after a finding of paternity and after payments are made out of the trust fund for the minor child, Mujo, there will be sufficient monies available for the care of those children, if indeed, there is a finding of paternity."

A final judgment was filed on April 19, 1990. On April 10, 1990, the circuit court of McHenry County in a separate proceeding entered an agreed order establishing a father-child relationship between Don Vucic and Teresa's sons Donald and Sean.

On May 8, 1990, Teresa filed a motion to modify the dissolution judgment. The spirit of Teresa's motion was a request that her two sons, Donald and Sean, be granted an interest in the $80,000 trust fund, although the motion technically contained no prayer for relief. On August 20, 1990, the trial court granted Joanna's motion to dismiss Teresa's motion to modify.

Don Vucic and Teresa Cwieka filed their notice of appeal on September 17, 1990. Thereafter, Joanna moved this court to dismiss the appeal as untimely. On December 11, 1990, this court took Joanna's motion, and respondents' response to it, with the case. The dissolution of Don and Joanna's marriage was uncontested, was not argued on appeal, and is not at issue.

The first issue for our consideration is whether we have proper jurisdiction. Petitioner alleges in her motion before this court that respondents made an untimely appeal. We disagree. Section 2—1203 of the Code of Civil Procedure states that a post-trial motion must be filed within 30 days after the entry of the judgment in a nonjury case and defines such motions as "a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203.) Here, the final judgment was read into the record on April 9, 1990, at which time the trial judge ordered Joanna's counsel to "prepare a judgment in conformance with the Court's ruling." The written judgment was signed by the judge on April 11, 1990, and filed on April 19, 1990. We note that both parties incorrectly state April 9, 1990, as the date of the final judgment in their briefs. Supreme Court Rule 272 clearly states that "[i]f at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by [her], *** *the judgment becomes final only when the signed judgment is filed.*" (Emphasis added.) (134 Ill. 2d R. 272; see *People v. Fagerholm* (1959), 17 Ill. 2d 131, 134-37.) Therefore, the correct date of final judgment here is April 19, 1990, when the written judgment was filed. Teresa's motion to modify the judgment was filed 19 days later, on May 8, 1990. Therefore, Teresa's post-trial motion complied with the 30-day filing requirement of section 2—1203.

Next, we consider Supreme Court Rule 303(a), which governs filing-time requirements for appeals from final judgments. Supreme Court Rule 303(a)(1) provides in part that the notice of appeal from a final judgment must be filed "within 30 days after the entry of the order disposing of the last pending post-trial motion." (134 Ill. 2d R. 303(a)(1).) Here, the trial court's order dismissing Teresa's post-trial motion to modify the judgment was entered and filed on August 20, 1990. Respondents filed their notice of appeal 28 days later, on September 17, 1990. Therefore, respondents' notice of appeal was timely filed. Petitioner's argument that the 30-day clock for filing a notice of appeal started ticking after entry of the April judgment has no merit. We find that we have proper jurisdiction, deny petitioner's motion and move on to address the four issues raised on appeal.

Respondents argue that the trial court erred in failing to make Donald Cwieka (age five) a party to the suit and appoint a guardian *ad litem* for him when it was brought out at trial that the child was in title to the Marengo property. We agree.

The law treats children with special care and attention. The child custody sections of the Illinois Marriage and Dissolution of Marriage Act (Act), for example, require that child custody arrangements be based on the "best interests of the child." (Ill. Rev. Stat. 1989, ch. 40, pars. 601 through 611.) Courts have both the power and the duty to protect minors involved in litigation. (*Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157, 163.) Courts have inherent power to appoint a guardian *ad litem* for a minor involved in litigation; in fact, the trial court has a duty to ensure adequate representation of the minor's interest. *In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 427.

It has long been recognized in Illinois that infants cannot waive notice (*Bonnell v. Holt* (1878), 89 Ill. 71, 77; *Chambers v. Jones* (1874), 72 Ill. 275, 278-79; *Hickenbotham v. Blackledge* (1870), 54 Ill. 316, 318) and that infant defendants must be brought into court by service of process or by publication if nonresidents. *Campbell v. Campbell* (1872), 63 Ill. 502, 503; *Hickenbotham*, 54 Ill. at 318; *Fischer v. Fischer* (1870), 54 Ill. 231, 235.

*Hickenbotham v. Blackledge* (1870), 54 Ill. 316, is particularly illustrative here. *Hickenbotham* was a partition action of 640 acres of land, of which certain minors were co-owners. No summons was issued or served on the minors, nor were they otherwise brought into court. A guardian *ad litem* was eventually appointed for the minors after the proceedings had started and prior to trial. The court ordered the sale of the land at the conclusion of the trial. The Illinois Supreme Court reversed, finding that "[i]t was manifest error to decree a partition or sale of lands of persons not parties to the record." (*Hickenbotham*, 54 Ill. at 318.) The court found that even though the trial court had properly appointed a guardian *ad litem* to represent the minors, "[n]ot being parties to the bill, the court had no power to render any decree affecting their interests in this real estate, and in that the decree was erroneous." *Hickenbotham*, 54 Ill. at 318.

It is plainly evident that, just as the minors in *Hickenbotham* were necessary parties and should have been made parties to the suit, Donald Cwieka was a necessary party to this suit. (See *Popovich v. Ram Pipe & Supply Co.* (1979), 74 Ill. App. 3d 343, 347 (court has a *sua sponte* duty to join party whose property interest will be affected by the proceedings where such is brought to the court's attention),

*rev'd in part on other grounds* (1980), 82 Ill. 2d 203; *Horn v. Horn* (1955), 5 Ill. App. 2d 346, 351-52 (trial court is powerless to enter a decree which affects a property interest of someone not before the court).) The trial court here heard testimony from Teresa that she and her son Donald held joint title to the Marengo property. The trial court erred by not *sua sponte* joining Donald Cwieka as a necessary party to the suit and appointing a guardian *ad litem* for him after Teresa testified that he was co-owner of the Marengo property.

Cases cited by petitioner are inapposite to our conclusion. While both *Rubin v. Boorstein* (1979), 73 Ill. App. 3d 689, and *Central National Bank v. Fleetwood Realty Corp.* (1982), 110 Ill. App. 3d 169, do correctly state that a necessary party need not be joined if his interests are adequately represented, neither involves protecting the interests of a child necessary as a party to the litigation.

Respondents next argue that the $80,000 trust in Joanna's name, funded by Don Vucic's share of the marital estate and from which the $500-per-month child support payments for Mujo would be made, was not proper. Notwithstanding respondents' inadequate treatment of this issue in their brief, we feel bound in the interest of justice to consider it. We believe that naming Joanna as trustee of a substantial portion of Don Vucic's share of the marital estate was plain error. The form of the trust was improper.

■ Section 503(g) of the Act allows the court to establish a trust for minors and states:

> "The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." (Ill. Rev. Stat. 1989, ch. 40, par. 503(g).)

The supreme court examined this portion of the Act, finding that the imposition of such a trust is "inappropriate in the absence of evidence showing some need to protect the interests of the children." (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 179 (the court examined section 503(d) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)), which is now codified as Ill. Rev. Stat. 1989, ch. 40, par. 503(g)).) Courts thereafter established section 503(g) trusts only when "there is evidence showing a need to protect the interests of the children." (*In re Marriage of Harsy* (1990), 193 Ill. App. 3d 415, 419. See *In re Marriage of Alltop* (1990), 203 Ill. App. 3d 606, 618 (trial court has discretion to impose educational trust if court finds that the trust was necessary to protect interests of the children); *In re Marriage of Pickholtz* (1988),

178 Ill. App. 3d 512, 517 (evidence of inability or unwillingness to pay required before the court may establish a section 503(g) trust).) One court found that the establishment of an education trust fund was warranted based on evidence in the record as to the father's inability to make timely child support payments and the father's disdain for education. *Harsy*, 193 Ill. App. 3d at 419-22.

■ Respondents' argument that the trust lacks sufficient guidelines has merit when you consider that the court appointed petitioner as trustee. While this point was not specifically argued by defendants on appeal, it appears to be the foundation of their argument that "in its present form, [the trust] is simply a disaster waiting to happen." The appointment of a fit and proper person to be trustee is a matter largely within the discretion of the court. (*Stone v. Baldwin* (1953), 414 Ill. 257, 263; *Steger v. Northen* (1923), 229 Ill. App. 529, 539.) As a general rule, interested persons should not be appointed trustee of a trust. (*Steger*, 229 Ill. App. at 540.) The power to appoint trustees is a very broad one, left to the sound discretion of the court, and in the determination of which the court should consider all the circumstances bearing on the matter. 76 Am. Jur. 2d *Trusts* §120 (1975).

■ In this particular case, we believe the trial court's choice of the divorced mother to be trustee for the trust, the corpus of which will be returned to the divorced father upon the trust's termination, was not proper. Joanna's interests are naturally divergent from that of her now former husband. To assign Joanna as gatekeeper for the trust fund, the corpus of which is to be returned to Don, is wrong on its face and is an invitation for future disputes. A neutral and impartial third party should have been appointed by the trial court as trustee. We believe the trial court abused its discretion by appointing Joanna as trustee.

In addition, there are no findings in the written judgment of April 19, 1990, as to Don Vucic's unwillingness or inability to make timely child support payments. Vucic is a convicted burglar and presently incarcerated. The trial court had evidence which may well support a finding that the establishment of a section 503(g) trust was reasonable because of Vucic's present inability to pay. (*Cf. Clemans v. Collins* (Alaska 1984), 679 P.2d 1041 (incarcerated father not liable for child support unless it is shown that he has income or assets to make such payments); *In re Marriage of Vetternack* (Iowa 1983), 334 N.W.2d 761 (incarcerated father's equity in parties' residence charged for child support payments he was unable to make during imprisonment); *Proctor v. Proctor* (Utah App. 1989), 773 P.2d 1389 (unpaid child support reduced from incarcerated father's equity in marital home).) Upon re-

mand, the trial court should explicitly make findings of Vucic's inability to pay child support and that a section 503(g) trust fund would be in Mujo's best interests.

■■ Respondents next argue that the trial court improperly valued the West Chicago property. We agree. The valuation of property is a question of fact, and a trial court's determination of value will not be reversed unless it is contrary to the manifest weight of the evidence. (*In re Marriage of Landfield* (1991), 209 Ill. App. 3d 678, 698.) In order to correctly evaluate marital assets, the trial court must have before it competent evidence of value, and its determination of value must be supported by the evidence. *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 180.

■■ Respondents correctly note that the general rule in Illinois is that a property owner is competent to render an opinion as to the value of his property. (*Hill v. Ben Franklin Savings & Loan Association* (1988), 177 Ill. App. 3d 51, 56; *American National Bank & Trust Co. v. City of North Chicago* (1987), 155 Ill. App. 3d 970, 972; *Department of Transportation v. Harper* (1978), 64 Ill. App. 3d 732, 735.) While normally applied in a land context rather than a family residence context, property ownership usually indicates knowledge of the original price paid, taxes paid, improvements made and the current state of the property such that the owner probably has a reasonably good idea of the current value. *Hill*, 177 Ill. App. 3d at 56; *American National Bank & Trust*, 155 Ill. App. 3d at 973.

■■ However, the rule is not absolute. A property owner may be shown to be incompetent to testify where it is affirmatively shown that special circumstances exist which indicate that he is unfamiliar with facts which give the property value. (*Hill*, 177 Ill. App. 3d at 56; *American National Bank & Trust*, 155 Ill. App. 3d at 973; *Harper*, 64 Ill. App. 3d at 735.) A party opposing the property owner-witness may make this affirmative showing on cross-examination, revealing the absence of probative value in the testimony. (*Hill*, 177 Ill. App. 3d at 56; *American National Bank & Trust*, 155 Ill. App. 3d at 973; *Harper*, 64 Ill. App. 3d at 735.) These rules have been applied by courts in dissolution of marriage cases. One such court applied these rules, finding no error by the trial court in admitting one spouse's testimony as to the value of certain marital real estate because his testimony was not challenged or impeached upon cross-examination. *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1090.

■■ Applying these valuation rules to the instant case, we find Joanna's testimony that the West Chicago home was worth $200,000 was sufficiently brought into question during her cross-examination so

as to require a better basis for valuing the home upon remand. On cross-examination, it was brought out that she did not know how her home compared to others in the neighborhood. The only basis for her valuation opinion was her testimony that an unnamed appraiser walked through the home "a few months ago" and valued it at $200,000. We believe that on remand the trial court should be presented with better evidence, possibly in the form of testimony from a real estate appraiser, upon which to base an opinion as to the value of the West Chicago home.

■■■ Respondents finally argue that the trial court improperly dismissed Teresa's motion to modify the judgment. We disagree. The trial court's dismissal of Teresa's motion will not be disturbed by this court in the absence of an abuse of discretion. (*In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093.) Teresa's motion asked for child support for her two sons and was based on the circuit court of McHenry County's order of April 10, 1990, finding that Don Vucic was the father of her two children. We note that the McHenry County court order was entered prior to the April 19, 1990, entry of the final judgment in this dissolution proceeding.

■■■ Undertaking new family obligations does not lessen the duty of a divorced husband to provide for his family by previous marriage. (*In re Marriage of Earhart* (1986), 149 Ill. App. 3d 469, 476; see *In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093 (if father's obligation to support children from a previous marriage is an ethical one, the trial court is not obliged to consider it as a factor in determining child support payments); *Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 63 (divorced husband's obligations to his first family must be met before his obligations to his second family can or will be considered).) We note that Illinois law provides that prior court-ordered, child-support obligations must be taken into account when child support is determined under the statutory guidelines in the Act. Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(3) (net income of supporting parent is income from all sources minus "(g) Prior obligations of support *** actually paid pursuant to a court order").

■■■ We find no abuse of discretion in the instant case and therefore agree with the trial court's dismissal of Teresa's motion. However, in the interest of justice and to guide the trial court upon remand, we are compelled to comment further. While we are mindful of the above decisions in this area, we believe that a trial court should not close its eyes to other children born outside of the marriage in question when it sequesters a large portion of a party's assets in trust. The existence of other children is relevant if the trial court de-

cides to sequester a portion of Don Vucic's assets in a section 503(g) trust and establish guidelines for the trust.

For the foregoing reasons, the judgment of the trial court is reversed except as to the dissolution of marriage, and the cause is remanded for a new trial.

Reversed and remanded.

WOODWARD and GEIGER, JJ., concur.